**Jane DOE I, et al., Plaintiffs,**

**v.**

**ISLAMIC SALVATION FRONT (FIS) and Anwar Haddam, Defendants.**

**Civil Action No. 96–02792 (SS).**

United States District Court, District of Columbia.

Feb. 3, 1998.

Michael Maggio, Maggio & Kattar, Washington, DC, Stephanie W. Fell, Jeffrey H. Blum, Michele Stephensen, Patterson, Belknap, Webb & Tyler, New York City, Rhonda Copelon, International Women's Human Rights Law Clinic, Flushing, NY, for Plaintiff.

Nicholas Gilman, Karla E. Saguil, Gilman & Pangia, Washington, DC, Malea Kiblan, Kiblan & Battles, McLean, VA, for Defendants.

Lisa E. Cleary, Cowen, Liebowitz & Lessem, P.C., New York City.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant Haddam's motion to dismiss. Plaintiffs are eight anonymous Algerian and French female citizens and the Rassemblement Algerien de Femmes Democrates (RAFD), a non-governmental membership organization of Algerian women with its headquarters in Algiers. Plaintiffs bring this action under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 (1997) and the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note (1997). They allege that Defendant Haddam served as a high-ranking official in the FIS and that he participated and conspired in crimes against humanity, war crimes, hijacking, summary execution, rape, mutilation, sexual slavery, murder, and numerous other violations of international law.

Defendant Haddam moves to dismiss, claiming: (1) lack of personal jurisdiction; (2) improper service; (3) lack of subject matter jurisdiction; (4) nonjusticiability; (5) lack of standing of the RAFD to bring this suit on either its behalf or on behalf of its members.

The Court finds that: (1) the Court has personal jurisdiction over Defendant Haddam; (2) Defendant Haddam was properly served; (3) the Court has subject matter jurisdiction under the ATCA; (4) Plaintiff's claims are justiciable; (5) the RAFD has standing to bring this suit. The Court will reserve its decision as to jurisdiction under the TVPA because additional facts are necessary in order to make that determination.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the civil war currently occurring in Algeria. Since Algeria won independence from France in 1962, Algeria has been governed by one party, the National Liberation Front, which has been backed by the military. In 1988–89, in response to broad popular opposition to military control, the Algerian constitution was modified to allow for a multi-party parliamentary system. In 1991–92, the Islamic Salvation Front ("FIS") won Algeria's first free elections. The military declared the election invalid and banned the FIS. As a result, Algeria has experienced a civil war of sorts, which has resulted in a rash of violent massacres of innocent civilians. Almost every day, scores of innocent civilians, mostly women and children, are being killed, raped, butchered, dismembered, burned, tortured, and treated in other vicious and inhumane ways. So far, tens of thousands of lives have been extinguished in this brutal conflict. It still remains unclear whether the FIS, the government of Algeria, other militant organizations, or a combination of all of these parties are the ones responsible for these terrorist activities.

Plaintiffs' complaint alleges that the FIS has played a major role in the campaign of violence, and it contains numerous allegations of atrocities attributed to the FIS. The FIS was founded in 1989 as an umbrella organization of Islamic groups opposed to the

**6**

governing military regime in Algeria. Plaintiffs claim that the FIS is an organization espousing an extremist interpretation of Islamic law, and that since its formation, the FIS has begun a campaign of terrorism against women and political activists expressing views contrary to the FIS's view of Islam. For example, Plaintiffs allege that in 1994, a FIS communique warned that any woman on the streets without a veil could be assassinated and that supporters of the FIS beheaded a 17–year–old woman for failing to wear a veil and then paraded her head in the street. *See* Amended Complaint, para. 47. Plaintiffs also allege that the FIS has been responsible, in significant part, for the kidnapping and sexual slavery of countless young women. *See* Amended Complaint, para 48.

Defendant Haddam is a native and a citizen of Algeria. In the democratic elections in December 1991, Mr. Haddam, a member of the FIS, won the first round of elections for a seat in the National Assembly. On January 12, 1992, the Algerian military government announced the cancellation of the second round of parliamentary elections in which it was predicted that the FIS would probably win a majority of the seats. On February 9, 1992, the military regime banned the FIS. Mr. Haddam fled Algeria and sought political asylum in the United States.

Plaintiffs allege that Mr. Haddam set up an office in Washington, D.C., where he acted as an official spokesman of the FIS, issuing newsletters, communiques, declarations, and other statements. Plaintiffs also claim that from his Washington, D.C. office, Mr. Haddam conspired, aided and abetted, and otherwise participated in the alleged violent activities of the FIS. Plaintiffs make several specific allegations regarding Mr. Haddam's knowledge of the FIS's activities and his advocacy in justifying them.

## II. ANALYSIS AND DISCUSSION

Defendant Haddam moves to dismiss, claiming: (1) lack of personal jurisdiction; (2) improper service; (3) lack of subject matter jurisdiction; (4) nonjusticiability; (5) lack of standing of the RAFD to bring this suit on either its behalf or on behalf of its members.

### A. Personal Jurisdiction

Defendant Haddam claims that the Court lacks personal jurisdiction over him because: (1) under D.C.Code Ann. § 13–423(a)(1), he has not transacted any business in the District of Columbia in connection with the facts giving rise to this cause of action; and (2) any transactions that the Defendant conducted in the District of Columbia fall under the "government contacts" exception as described in *Environmental Research Int'l Inc. v. Lockwood Greene Engineers Inc.*, 355 A.2d 808 (D.C.App.1976).

Pursuant to D.C.Code Ann § 13–423(a)(1), "A District of Columbia court may exercise personal jurisdiction over a person ... transacting any business in the District of Columbia." The Constitution requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 462 (D.C.Cir.1988) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction over a defendant exists when "the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The Court finds that Defendant Haddam has the requisite minimum contacts with the District of Columbia. Defendant Haddam operated the Washington, D.C. office of the FIS. Plaintiffs allege that their causes of action arise from the numerous activities that Defendant Haddam conducted on behalf of the FIS from his Washington, D.C., office. Accordingly, there are ample minimum contacts between Defendant Haddam and the District of Columbia.

Defendant Haddam also claims that there is an exception to the District of Columbia's "long-arm" statute that excludes activities involving the solicitation of funds from government agencies. *See Environmental Research Int'l Inc. v. Lockwood Greene Engineers Inc.*, 355 A.2d 808, 813 (D.C.Ct.App.

1976). In this case, however, Defendant Haddam conducted numerous other activities in the District of Columbia that were unrelated to the solicitation of funds from the United States government. Accordingly, personal jurisdiction over Defendant Haddam lies in the District of Columbia.

### B. Service

Defendant Haddam claims that although he was personally served with the summons and complaint, service was nevertheless improper because he was an "excludable alien" under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1970 & Supp.1977).

■ The Court finds that the Defendant was properly served. Fed.R.Civ.P. 4(e)(2) authorizes personal service of a summons and complaint upon an individual physically present within any judicial district of the United States. It is not limited to the district in which the complaint was filed. Defendant Haddam was personally served in Virginia and does not deny such service. Defendant fails to cite any case law in support of his contention that his status as an "excludable alien" would prevent service. In essence, Defendant is asking the Court to create a new form of immunity, preventing excludable aliens from being sued in this country. The Court declines to do so.

### C. Subject Matter Jurisdiction

Plaintiffs seek subject matter jurisdiction of this Court pursuant to the ACTA, the TVPA, and under general federal question jurisdiction, 28 U.S.C. § 1331 (1997).

### 1. Jurisdiction Under the ATCA

The ATCA was enacted as part of the Judiciary Act of 1789. It provides: "The district court shall have original jurisdiction of any civil [tort] action by an alien ... committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350 (1988). Recently, Congress reaffirmed that the ATCA is an authorization of United States courts to serve as forums to redress violations of international law. In the legislative history of the TVPA, enacted into law in 1992, Congress stated that the ATCA "should remain intact to permit suits based on other norms that already exist or may ripen in the future into rules of customary international law.". H.R.Rep. No. 102–367, at 3–4 (1991) reprinted in 4 U.S.C.C.A.N. 86 (1992).

■ Three conditions must be met in order for there to be subject matter jurisdiction under the ATCA: (1) the Plaintiff must be an alien; (2) the cause of action must be for a tort; and (3) the tort must be committed in violation of the law of nations or treaty of the United States. *See Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir.1995).

Defendant Haddam claims that the third condition is not satisfied in this case. He argues that according to international law, a violation of the law of nations must be an act under actual or apparent authority, or color of law, of a foreign state. In other words, Defendant claims that the ATCA, although not explicitly requiring state action, does so because the law of nations has such a requirement.

■ The law of nations, currently known as international customary law, is formed by the "general assent of civilized nations." *Filartiga v. Pena–Irala,* 630 F.2d 876, 880 (2d Cir.1980). Recently, the Second Circuit, in *Kadic v. Karadzic,* 70 F.3d 232 (2d Cir.1995) rejected an argument similar to Defendant Haddam's. There, the defendant claimed, similar to Defendant Haddam, that he was a private actor rather than a state actor and that international law only applies to state action. The Second Circuit disagreed with the defendant's claims. "We do not agree that the law of nations, as understood in the modern era, confines its reach to state action. Instead, we hold that certain forms of conduct violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals." *Karadzic,* 70 F.3d at 239. The court cited examples of action by private individuals and entities that would violate international law: piracy, slave trade, war crimes, and aircraft hijacking. *See id.* at 239–40. The court made it clear that these were not the exclusive exceptions to state action; in fact, the court declared that "offenses of 'universal concern'" were capable

of being committed by private actors. *Id.* at 240. The court concluded that

> Appellants' allegations that Karadzic personally planned and ordered a campaign of murder, rape, forced impregnation, and other forms of torture designed to destroy the religious and ethnic groups of Bosnian Muslims and Bosnian Croats clearly state a violation of the international law norm proscribing genocide, regardless of whether Karadzic acted under color of law or as a private individual. *Id.* at 242.

In 1984, this Circuit had occasion to address the issue, but it did not reach a consensus. In *Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C.Cir.1984), the Circuit held that Israeli citizens lacked subject matter jurisdiction under the ATCA. However, the panel issued a fragmented decision, with each judge affirming the result for different reasons. Judge Edwards held that although there were instances where private actors could be liable under international law, the law of nations as it stood in 1984 required state action for acts of torture. *See id.* at 795. Further, he concluded that terrorism was not outlawed by international law. *See id.* at 796. Judge Bork held that the ATCA was merely a grant of jurisdiction and did not create a cause of action. *Id.* at 800. Judge Robb held that the action should be dismissed on grounds of justiciability. *Id.* at 822.

The opinions in *Tel–Oren* did not hold that international law requires state action. Judge Edwards stated that slave trading, piracy, and "a handful of other private acts" constitute violations of international law by private actors. 726 F.2d at 794 (Edwards J. concurring). Judge Bork also noted that international law prohibited private acts such as piracy and interference with ambassadors. 726 F.2d at 813–15.

■ The decision in *Karadzic* came after this Circuit's opinions in *Tel–Oren*. It clearly dealt with the issue. Because of the clarity of the Second Circuit's decision and because the facts there are similar to those in the instant case, this Court finds that it is the appropriate precedent to apply in this case. The *Karadzic* court's analysis is directly on point and addresses the issues in this case more pointedly than the three conflicting opinions in *Tel–Oren*. The interpretation of international law in *Karadzic* in 1995 is far more timely than the interpretations set forth in *Tel–Oren*, which examined international law as it stood almost fifteen years ago. Courts must interpret international law under the ATCA as "it has evolved and exists among the nations of the world today." *Karadzic*, 70 F.3d at 238; *see also Tel–Oren*, 726 F.2d at 777 ("[T]he 'law of nations' is not stagnant and should be construed as it exists today among the nations of the world.") (Edwards, J. concurring); *Filartiga v. Pena–Irala*, 630 F.2d 876, 881 (2d Cir.1980) ("Thus it is clear that courts must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today.") (citing *Ware v. Hylton*, 3 U.S. (3 Dall.) 199, 1 L.Ed. 568 (1796)).

■ In this case, the alleged acts of the FIS are clearly in violation of international law as it stands today.[1] Common Article 3 of the Geneva Conventions, which has been ratified by over 180 states, applies to "an armed conflict not of an international character" and protects civilians not participating in the conflict by requiring that they be "treated humanely, without any adverse distinction founded on race, color, religion or faith, sex, birth or wealth, or any other similar criteria." It prohibits, among other things, "murder of all kinds, mutilation, cruel treatment and torture," kidnapping, and summary executions. Geneva Convention I art. 3(1). The *Karadzic* court held that Common Article 3 applies to all parties to a conflict, not merely to official governments. *Karadzic*, 70 F.3d at 243. This Court concludes that the acts of the FIS alleged by Plaintiffs are proscribed by international law against both state and private actors, as evidenced by Common Article 3. Accordingly, Plaintiffs have properly alleged subject matter jurisdiction under the ATCA.

1. Even if private actors could only violate international law for the examples cited in the *Tel–Oren* opinions (namely, slavery and hijacking), the Plaintiffs in this case have alleged these acts.

## 2. Jurisdiction Under the TVPA

The TVPA was signed into law in March 1992. It provides for a federal cause of action for torture and execution committed anywhere in the world. The central elements of a TVPA claim are set forth in the statute:

An individual who, under actual or apparent authority, or under color of law, of any foreign nation—

(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or

(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death. TVPA § 2(a).

Defendant Haddam claims that the TVPA requires state action and that the acts of the FIS and its officials and supporters constitute private action. In contrast to the ATCA, the TVPA contains explicit language requiring state action. The legislative history clearly indicates that "The bill does not attempt to deal with torture or killing by purely private groups." H.R.Rep. No. 367, at 5.

However, the state action requirement of the TVPA does not require that a particular government be officially recognized. Certain private groups may constitute a de facto state, in which case they will be held liable under the TVPA. *See Karadzic*, 70 F.3d at 244. The de facto state doctrine recognizes that the TVPA does not concern the legitimacy of a particular organization but its power. According to international law, "a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with such other entities." Restatement (Third) § 201; *see also Karadzic*, 70 F.3d at 244 (applying the Restatement definition of "state" under the TVPA); *Tel–Oren*, 726 F.2d at 791 n. 21 (Edwards, J. concurring); *id.* at 804 (Bork, J. concurring).

Defendant Haddam argues that the FIS does not qualify as a de facto state. Defendant points to *Tel–Oren*, in which this Circuit held that the plaintiff had failed to make sufficient allegations regarding the activities of the PLO to meet the de facto state standard. In this case, Plaintiffs make extensive allegations concerning the activities of the FIS that meet the de facto state standard: (1) the FIS controls a substantial amount of Algerian territory, *see* Amended Complaint, para. 67; (2) the FIS governs its population by issuing laws in the form of communiques and assessing taxes, *see* Amended Complaint, para. 67–71; (3) the FIS conducts trials and imposes death sentences, *see* Amended Complaint, para. 68; (4) the FIS engages in international diplomatic relations, *see* Amended Complaint, para. 34–36.

At this time, the Court believes that it is premature to determine whether the FIS actually constitutes a de facto state for the purposes of jurisdiction under the TVPA. The de facto state doctrine requires the Court to make factual findings regarding the activities of the FIS. At this stage, the record contains only the bare allegations of the Plaintiffs. To make the requisite factual findings, the Court will await the further development of the record.

## 3. Jurisdiction Under 28 U.S.C. § 1331

Because the ATCA supplies jurisdiction in this case, the Court will not reach the issue of whether 28 U.S.C. § 1331 provides an independent basis for subject matter jurisdiction. *See Karadzic*, 70 F.3d at 246 (recognizing the possibility that 28 U.S.C. § 1331 supplies jurisdiction for violations of international law, but not reaching the ultimate merits of the issue).

### D. Justiciability

Defendant Haddam claims that the Court cannot determine the status of the FIS and recognize it as a de facto state without infringing upon the domain of the legislative and executive branches. The only specific nonjusticiable issue that Defendant Haddam raises is whether the FIS can be recognized as a de facto state. This claim only applies to jurisdiction under the TVPA, not the ATCA. The Court will reserve ruling on this

question until it rules on whether Plaintiffs have established jurisdiction under the TVPA.

### E. Standing

Defendant Haddam claims that the RAFD lacks standing. He does not challenge the standing of the eight anonymous Plaintiffs. The RAFD is a non-governmental membership organization of democratic Algerian women. Its headquarters are in Algiers. The RAFD's purpose and its activities are directed towards advancing women's human rights. Plaintiffs claim that the FIS's campaign of terror has forced the leaders of the RAFD to go into hiding, thus preventing the RAFD from carrying out its activities of advancing the rights of women in Algeria.

■■■ There are two ways that an association can have standing. First, it can have direct standing to bring a claim on behalf of itself. Second, it can have standing to represent its members.[2] In order for an association to have standing to bring a claim on behalf of itself, it must demonstrate: (1) an injury in fact; (2) causation; and (3) redressibility. *See United Food and Commercial Workers Union Local 751 v. Brown Group. Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

■■ The Court finds that the RAFD has alleged a cognizable injury, sufficient to have standing under ordinary circumstances. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (holding that the injury in fact requirement was satisfied when an association's mission is impeded or when its resources are drained). The RAFD has alleged that Defendant Haddam's activities have caused the harm to RAFD. Finally, monetary damages will redress the injury caused to the RAFD.

However, this case presents the novel issue of whether associations have standing under the ATCA or the TVPA. Neither statute addresses this issue, and the legislative history does not indicate Congress' intent. While the Court has some reservations about permitting an association to sue under the ATCA and the TVPA, the Court finds that

since the eight individual plaintiffs can clearly go forward, Defendant Haddam will not be prejudiced if the RAFD remains in this case. At this stage of the proceedings, the Court finds that the RAFD will be permitted to remain in the case.

An appropriate order accompanies this Memorandum Opinion.

### *ORDER*

This matter comes before the Court on Defendant Haddam's motion to dismiss. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant Haddam's motion to dismiss be **DENIED**. The Court will reserve ruling on the issue of jurisdiction under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (1997).

---

**2.** Because the Court finds that the RAFD has standing on behalf of itself, the Court will not address the issue of whether it has standing to represent its members.