**THE ESTATE OF VALMORE LACAR-NO RODRIQUEZ, the Estate of Victor Hugo Orcasita Amaya, the Estate of Gustavo Soler Mora,and Sintram-ienergetica, Plaintiffs,**

v.

**DRUMMOND COMPANY, INC., Drummond Ltd, and Garry N. Drummond, Defendants.**

No. CV–02–BE–0665–W.

United States District Court, N.D. Alabama, Western Division.

April 14, 2003.

Daniel M Kovalik, United Steelworkers of America, Pittsburgh, PA, Richard P Rouco, Whatley Drake LLC, Birmingham, Terry Collingsworth, Natacha Thys, International Labor Rights Fund, Washington, DC, for Valmore Lacarno Rodriquez, The Estate of, adding by amd complaint (doc # 25), John Doe I, as relative and heir of the deceased; and Jane Doe I, on behalf of herself as the wife and heir of deceased, and on behalf of their minor child, Victor Hugo Orcasita Amaya, The Estate of, adding by amd complaint (doc # 25), Jane Doe II, as a relative and heir of deceased, Gustavo Soler Mora, The Estate of, adding by amd complaint (doc # 25), Jane Doe III, as a relative and heir, Sintramienergetica, plaintiffs.

William Anthony Davis, III, W Stancil Starnes, Philip G Piggott, Starnes & Atchison LLP, Birmingham, William H Jeffress, Jr, Herbert J Miller, Mark T Stancil, Baker Botts LLP, Washington, DC, for Drummond Company, Inc, Drummond Ltd, Garry N Drummond, defendants.

## MEMORANDUM OPINION

BOWDRE, District Judge.

This case is before the court on Defendants' Motion to Dismiss Complaint (Doc. 14); Defendants' Motion to Dismiss First Amended Complaint (Doc. 30); Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33); and Plaintiffs' Motion for Leave to Proceed Anonymously (Doc. 34). The court held a hearing on the above motions on September 17, 2002. As a preliminary matter, the court notes that defense counsel conceded at the hearing that Defendants' Motion to Dismiss (Doc. 14) was moot. In addition, the court denied Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33) after finding that Plaintiffs' First Amended Complaint met the general pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Therefore, the court does not address Defendants' Joint Motion to Dismiss (Doc. 14) or Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33) in this Memorandum Opinion.

### I. Facts [1]

The plaintiffs in this lawsuit are relatives and heirs of Valmore Locarno Rodriquez ("Locarno"), Victor Hugo Orcasita Amaya ("Orcasita"), and Gustavo Soler Mora ("Soler"), as well as the trade union SINTRAMIENERGETICA ("union"), of which the decedents were members. Pl. First Am. Compl. at 2. Plaintiffs seek injunctive relief and damages against Defendants Drummond Company, Inc., Drummond Ltd, and Gary N. Drummond for their alleged role in the death of Locarno, Orcasita, and Soler. Locarno, Orcasita, and Soler were trade union leaders for SINTRAMIENERGETICA and represented workers at Defendant Drummond, Ltd.'s mines in Columbia. *Id.* at 2. Specifically, plaintiffs assert claims under the Alien Tort Claims Act, 28 U.S.C. § 1350, the Torture Victim Protection Act, 28 U.S.C. § 1350, as well as state law claims

---

1. This statement of facts comes from the plaintiffs' complaint. When evaluating a motion to dismiss, the court must accept facts stated in the complaint as true. *Fortner v. Thomas*, 983 F.2d 1024, 1027 (11th Cir.1993).

for wrongful death and aiding and abetting. *Id.* at 28–38.

Defendant Drummond, Ltd. is an Alabama company that manages the daily operations of Drummond Co. coal operations in Columbia. *Id.* at 9. Drummond, Ltd. is a wholly-owned subsidiary of Drummond Company, Inc., an Alabama corporation. *Id.* Defendant Garry N. Drummond is the Chief Executive Officer of Drummond Company, Inc. and a resident of Alabama. *Id.* at 10.

Plaintiffs allege that defendants are jointly and severally liable for the death of Locarno, Orcasita, and Soler by paramilitaries of the United Self–Defense Forces of Colombia ("AUC") because the paramilitaries were acting as defendants' agents. *Id.* at 11. As evidence of this agency relationship, plaintiffs allege that defendants allowed AUC paramilitaries to enter their mining facilities in Colombia because the paramilitaries are "in a cooperative and symbiotic relationship with the regular [Colombian] military that are stationed on Drummond's property." *Id.* at 20. In addition, plaintiffs allege that the paramilitaries that actually killed Locarno and Orcasita stated that "they were there to settle a dispute that Locarno and Orcasita had with Drummond." *Id.* at 21. At the time of their death, Locarno and Orcasita were in the midst of contract negotiations on behalf of Drummond employees with Drummond, Ltd. *Id.* at 24.

Soler assumed the position of President of SINTRAMIENERGETICA following the deaths of Locarno and Orcasita. *Id.* at 25. Like Locarno and Orcasita, Soler was removed from a bus on his way home from a Drummond mine and was killed by paramilitaries of the AUC. *Id.* at 26. At the time of his death, Soler was actively engaged in negotiations with Drummond for new security agreements for the mine workers. *Id.* at 25.

## II. Procedural History

Plaintiffs filed this lawsuit on March 14, 2002, alleging claims on behalf of the Estate of Valmore Locarno Rodriquez, the Estate of Victor Hugo Orcasita Amaya, the Estate of Gustavo Soler Mora, and SINTRAMIENERGETICA. On May 30, 2002, Defendants filed a Motion to Dismiss the Complaint (Doc. 14), arguing that the plaintiffs lacked capacity and standing to maintain this action. On June 28, 2002, plaintiffs filed their First Amended Complaint alleging claims on behalf of "John Doe I, as a relative and heir of the deceased, Valmore Locarno Rodriquez; Jane Doe I, on behalf of herself as the wife and heir of the deceased, Valmore Locarno Rodriquez and on behalf of their minor child; Jane Doe II, as a relative and heir of the deceased, Victor Hugo Orcasita Amaya; Jane Doe III, as a relative and heir of Gustavo Soler Mora; and SINTRAMIENERGETICA." Plaintiffs' filing of their First Amended Complaint rendered Defendants' Motion to Dismiss Complaint (Doc. 14) moot.

However, prior to filing their First Amended Complaint, plaintiffs did not seek leave of court to proceed anonymously. Notwithstanding plaintiffs' procedural error, defendants filed a joint Motion to Dismiss First Amended Complaint on August, 2, 2002 (Doc. 30). In addition, defendants filed a Joint Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rule 8(a) (Doc. 33) on August 5, 2002. After defendants' motions notified plaintiffs of their failure to seek leave to proceed anonymously, plaintiffs filed a Motion for Leave to Proceed Anonymously (Doc. 34) on August 9, 2002. The court held a hearing on all pending motions on September 17, 2002.

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for

dismissal of a claim that fails to state a claim upon which relief can be granted. The Eleventh Circuit has clearly articulated the standard of review for a Rule 12(b)(6) motion to dismiss:

> "The standard of review for a motion to dismiss is the same for the appellate court as it is for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11 th Cir. 1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Harper v. Blockbuster Etnm't Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998), cert. denied, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences are taken as true." *Stephens*, 901 F.2d at 1573. Accordingly, the court accepts the facts stated in Plaintiffs' First Amended Complaint as true for the purpose of this motion.

## IV. Analysis

In their First Amended Complaint, plaintiffs assert the following claims: (1) The Alien Tort Claims Act, 28 U.S.C. § 1350, for extrajudicial killing on behalf of all plaintiffs against all defendants; (2) The Torture Victim Protection Act, 28 U.S.C. § 1350, for extrajudicial killing on behalf of all plaintiffs against all defendants; (3) The Alien Tort Claims Act, 28 U.S.C. § 1350, for denial of fundamental rights to associate and organize on behalf of all plaintiffs against all defendants; (4) Wrongful Death on behalf of all plaintiffs against all defendants; and (5) Aiding and Abetting on behalf of all plaintiffs against all defendants.

In their Joint Motion to Dismiss the Plaintiff's First Amended Complaint (Doc. 30), defendants assert that plaintiff's complaint is due to be dismissed for the following reasons: (1) because plaintiffs failed to obtain leave to proceed anonymously, this court lacks jurisdiction over the unnamed plaintiffs; (2) plaintiff SINTRAMIENERGETICA lacks standing and capacity to maintain any claims against defendants; (3) the complaint fails to state a claim upon which relief may be granted; (4) this court lacks jurisdiction over this controversy under the political question doctrine; and (5) this court should decline to exercise jurisdiction over the claims asserted by SINTRAMIENERGETICA under the doctrine of international comity.[2]

### A. Claims Asserted by Individual Unnamed Plaintiffs

Defendants' primary argument at the hearing was that the individual plaintiffs' failure to receive leave to proceed anonymously divests this court of jurisdiction over the unnamed parties. Defendants argue that absent court permission to proceed using pseudonyms, "the federal court lacks jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir.2001) (quoting *National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir.1989)). Defendants further argue that plaintiffs' failure to receive leave to proceed pseudonymously cannot be cured retroactively. *See W.N.J. v. Yocom*, 257 F.3d at 1172 (finding that entry of *nunc pro tunc* order granting permission to file under pseudonym "can-

---

2. As stated at the hearing, defendants' arguments regarding the political question doctrine and the doctrine of international comity contain fact-intensive inquiries that are more appropriately addressed at the summary judgment stage. Thus, the court does not address those issues in this Memorandum Opinion.

not cure the failure to secure permission at filing").

In *W.N. J. v. Yocom*, 257 F.3d 1171 (10th Cir.2001), the plaintiffs used pseudonyms without first obtaining permission from the district court. 257 F.3d at 1172. After the plaintiffs appealed the dismissal of their case on summary judgment to the Tenth Circuit Court of Appeals, the plaintiffs received a *nunc pro tunc* order by the original magistrate judge granting plaintiffs leave to proceed anonymously. *Id.* The Tenth Circuit Court of Appeals dismissed the plaintiffs' appeal after concluding that the appellate court had no jurisdiction over the unnamed parties. *Id.* The *Yocom* court found that the federal district court lacked jurisdiction over the unnamed plaintiffs because they failed to request permission to proceed anonymously. *Id.* at 1173. In addition, the appellate court found that a court cannot retroactively grant jurisdiction to plaintiffs with a *nunc pro tunc* order: "A lack of jurisdiction cannot be corrected by an order *nunc pro tunc. Central Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir.1999). As noted in that case, 'the only proper office of a *nunc pro tunc* order is to correct a mistake in the records; it cannot be used to rewrite history.'" *Yocom*, 257 F.3d at 1173. Thus, the Tenth Circuit concluded that "[b]ecause the district court never had jurisdiction over the plaintiffs when it granted defendants' motion for summary judgment, [it had] no authority to consider an appeal of that decision." *Id.* at 1173.

Like the plaintiffs in *Yocom*, the plaintiffs in this case failed to seek leave to proceed anonymously. Thus, this court does not have jurisdiction over the unnamed plaintiffs because of this procedural error. Accordingly, the court grants Defendants' Motion to Dismiss First Amended Complaint as to all unnamed plaintiffs.

All claims asserted by the individual unnamed plaintiffs are dismissed without prejudice. Because plaintiffs indicated at oral argument that they will likely file a Motion for Leave to Proceed Anonymously in advance of filing a Second Amended Complaint, the court briefly addresses the legal requirements for proceeding anonymously.

 Rule 10(a) of the Federal Rules of Civil Procedure expressly requires that the parties be fully identified in the pleadings, absent a finding by the court that certain conditions are met. The general rule, as expressed in Rule 10(a), provides:

> Every pleading shall contain a caption setting forth the name of the Court, the title of the action, the file number, and a designation as in Rule 7(a). *In the Complaint, the title of the action shall include the names of all the parties,* but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

Fed.R.Civ.P. 10(a) (emphasis added). The Eleventh Circuit has noted that "[t]his rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320 (11th Cir.1992). However, under certain limited circumstances, a plaintiff may seek leave of court to proceed under a pseudonym. "The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.' It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Doe v. Frank*, 951 F.2d at 323 (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug.1981)).[3]

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the

■ The Eleventh Circuit has allowed parties to proceed anonymously when the plaintiffs were challenging governmental activity, when the plaintiffs were required to disclose information of the utmost intimacy, and when the plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution. *Doe v. Frank*, 951 F.2d at 323 (citing *Stegall*, 653 F.2d at 185). The *Doe v. Frank* court summarized the rare instances when a plaintiff should be allowed to proceed anonymously as follows: "A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." 951 F.2d at 324. In deciding whether to allow a party to proceed anonymously, the trial court "should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Doe v. Frank*, 951 F.2d at 323.

Should · plaintiffs file a Motion to Proceed Anonymously prior to filing a Second Amended Complaint, this court will apply the above requirements in assessing whether plaintiffs can proceed anonymously. However, because plaintiffs failed to seek such leave prior to filing the complaint currently before this court, this court has no jurisdiction over the unnamed plaintiffs and, therefore, the court grants without prejudice Defendants' Motion to Dismiss the unnamed plaintiffs for lack of jurisdiction.

Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former

### B. Claims Asserted by SINTRAMIENERGETICA

Unlike the unnamed individual plaintiffs, the court has jurisdiction over the appropriately named trade union SINTRAMIENERGETICA. Because the court has jurisdiction over the claims asserted by SINTRAMIENERGETICA, the court addresses the merits of the defendants' arguments for dismissal of these claims. As previously stated, SINTRAMIENERGETICA asserts claims against all defendants under the Alien Tort Claims Act, 28 U.S.C. § 1350, for extrajudicial killing and for denial of fundamental rights to associate and organize; under the Torture Victim Protection Act, 28 U.S.C. § 1350, for extrajudicial killing; under Alabama, United States, or Colombian law for wrongful death; and under Alabama law for "aiding and abetting."

### 1. Wrongful Death

■ The court first notes that, at the hearing, counsel for SINTRAMIENERGETICA conceded that the union does not have standing to assert a claim for wrongful death under Alabama law in Count Five. *See* Ala.Code § 6–5–410 (1975) ("[T]he cause of action is vested in the personal representative who acts as an agent of legislative appointment for the purpose of effectuating public policy. And this right is vested in the personal representative alone, except in the case of minors."). However, the union argued that it had standing under Colombian law to assert a claim for wrongful death. Instead of providing their own evidence of their right to proceed under Colombian law, plaintiffs relied on the declaration of Defendants' expert, Alejandro Linares–Cantillo. Def. Ex. at Tab 1 (Doc. 32).

Fifth Circuit handed down prior to October 1, 1981.

Mr. Linares–Cantillo testified that Colombian law allows the "family members or relatives" of the deceased to bring individual claims for the damages caused to them directly or for the unclaimed actions of the decedent in their capacity as heirs. Def. Ex. at Tab 1 (Doc. 32). Under Colombian Law, any family member or relative can bring a claim for wrongful death for the damages caused to them directly by the decedent's death. *Id.* However, to sue for the unclaimed actions of the decedent, a plaintiff must prove that he or she is the legal heir of the decedent. *Id.* In this case, Mr. Valmore Lacarno Rodriquez, Mr. Victor Hugo Orcasita Amaya, and Mr. Gustavo Soler Mora died intestate and, thus, for the union to bring a representative action, it must prove that it is an "heir" as defined by Articles 1045 and 1051 of the Columbian Civil Code. *See id.*

While Mr. Linares–Cantillo's declaration states that the individual plaintiffs would have standing under Columbian law to bring individual claims for wrongful death so long as they are family members or relatives of the deceased, or to bring representative claims if they are legal heirs of the deceased, the declaration does not provide any authority for a cause of action by the union.[4] Again, plaintiff did not present any legal authority-and the court could find none-for its asserted right to sue for wrongful death under Colombian law. Thus, the court grants defendants' Motion to Dismiss as to the union's claim for wrongful death in Count Four.

## 2. Aiding and Abetting

▮▮ Regarding Count Five, plaintiffs could provide no authority that a union has standing to bring an "aiding and abetting" claim against defendants under Alabama law.[5] Indeed, plaintiffs provided no legal basis for any such claim under Alabama law, and the court knows of none. Therefore, the court grants Defendants' Motion to Dismiss as to the union's claims in Count Five.

## 3. The Alien Tort Claims Act

▮▮ In Counts One and Three of the Amended Complaint, SINTRAMIENERGETICA asserts claims under the Alien Tort Claims Act for extrajudicial killing and for denial of the fundamental rights to associate and organize. The Alien Tort Claims Act ("ATCA") provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The Eleventh Circuit has recognized that the Alien Tort Claims Act "establishes a federal forum where courts may fashion domestic common law remedies to give effect to violations of customary international law." *Abebe–Jira v. Negewo*, 72 F.3d 844, 848 (11th Cir. 1996). Thus, the ATCA "creates both subject matter jurisdiction and a private right of action." *Estate of Winston Cabello v. Fernandez–Larios*, 157 F.Supp.2d 1345 (S.D.Fla.2001) (citing *Abebe–Jira*, 72 F.3d at 848).

## a. SINTRAMIENERGETICA's Standing to Assert ATCA Claims

Defendants argue that the union lacks standing to assert claims under the ATCA because the union is beyond the "zone of

---

4. Should plaintiffs file an amended complaint in this action, plaintiffs should clearly set forth the legal basis for their claims and not rely on this court or defendants to provide the relevant legal authority for plaintiffs' claims.

5. Unlike Count Four, plaintiffs only assert claims in Count Five under Alabama law. Paragraph 80 of Plaintiffs' First Amended Complaint states the following: "Defendants' aiding and abetting the wrongful acts delineated in the preceding causes of action is actionable under the laws of Alabama."

interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Defendants further argue that "it simply is anachronistic to suggest that Congress in passing the Judiciary Act of 1789 meant to protect entities so removed from the core concern of the statute." Def. Mem. at 21 (Doc. 33).

The union counters that the defendants' direct attack against the union's leaders has caused specific harm to the organization. The union argues that courts have found standing for organizations in cases that are very similar to the instant case. *See Jane Doe I v. Islamic Salvation Front*, 993 F.Supp. 3, 10 (D.D.C.1998) ("While the court has some reservations about permitting an association to sue under the ATCA and the TVPA, the Court finds that since the eight individual plaintiffs can clearly go forward, Defendant Haddam will not be prejudiced if the RAFD remains in this case. At this stage of the proceedings, the Court finds that the RAFD will be permitted to remain in the case.").

█ In *Islamic Salvation Front*, the district court reluctantly found that a non-governmental women's organization had standing under the ATCA and the TVPA to seek redress for harms done to the organization as a result of the defendant's alleged participation in crimes against humanity, war crimes, highjacking, summary execution, rape, mutilation, sexual slavery, murder, and numerous other violations of international law. 993 F.Supp. at 10. In reaching its decision, the court noted that an association can have standing in two ways: "First, it can have direct standing to bring a claim on behalf of itself. Second, it can have standing to represent its members. In order for an association to have standing to bring a claim on behalf of

itself, it must demonstrate: (1) an injury in fact; (2) causation; and (3) redressability." *Islamic Salvation Front*, 993 F.Supp. at 10 (citing *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996)).

█ Like the court in *Islamic Salvation Front*, this court is uncomfortable about permitting a trade union to sue under the ATCA and TVPA, particularly because neither statute addresses this issue and the legislative history does not indicate Congress' intent. Indeed, the court questions whether allowing the union to proceed will stretch the outer reaches of the ATCA. However, the court finds that SINTRAMIENERGETICA has alleged a cognizable injury, sufficient to have direct standing under ordinary circumstances and to survive a motion to dismiss. *See Islamic Salvation Front*, 993 F.Supp. at 10 (finding that women's organization alleged injury and had direct standing to assert ATCA claims) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). The union has alleged that defendants' complicity in the attack against the union's leaders has forced a number of other members and leaders of the union to go into hiding, has threatened its viability, and has forced it to expend scarce resources in providing security and protection to its members. Pl. Brief at 17 (Doc. 37). Furthermore, monetary damages will redress the alleged injury caused by defendants. Therefore, *at this procedural stage in the proceedings*, the court finds that SINTRAMIENERGETICA has alleged sufficient injury to have standing under the ATCA and to weather a motion to dismiss.

**b. Jurisdiction Under the ATCA**

█ As previously noted, three conditions must be met for subject matter

jurisdiction under the ATCA: (1) the plaintiff must be an alien; (2) the cause of action must be for a tort; and (3) the tort must be committed in violation of the law of nations or a treaty of the United States. *Kadic v. Karadzic,* 70 F.3d 232, 239 (2d Cir.1995). In the instant case, no one disputes that the trade union is a foreign entity. Thus, the first condition is satisfied in this case. In addition, defendants do not dispute that the trade union's claim in Count One for extrajudicial killing under the ATCA alleges an actionable tort, thereby satisfying the second condition for jurisdiction. Defendants do argue, however, that the union's claim in Count Three for denial of the fundamental rights to associate and organize under the ATCA fails to allege an actionable tort. Defendants also argue that regardless of the torts alleged by the union in Counts One and Three, the union has failed to allege sufficient facts to establish that defendants acted under color of state law. Defendants argue that because the ATCA grants jurisdiction only for torts "committed in violation of the law of nations or a treaty of the United States," the ATCA implicitly requires that a violation of the law of nations must be an act committed under color of law of a foreign state. Before addressing defendants' claim that the denial of the fundamental rights to associate and organize is not an actionable tort, the court addresses whether plaintiffs have adequately alleged a violation of international law.

### i. Alleged Violations of International Law

 Conduct violates the "law of nations" if it contravenes "well-established, universally recognized norms of international law." *Kadic v. Karadzic,* 70 F.3d 232, 239 (2d Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996). In *United States v. Smith,* 18 U.S. (5 Wheat.) 153, 160–61, 5 L.Ed. 57

(1820), the Supreme Court counseled that the law of nations "may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognising and enforcing that law." The general rule is that international law only binds state actors. However, courts interpreting the ATCA have found that certain forms of conduct—piracy, the slave trade, slavery and forced labor, aircraft hijacking, genocide, and war crimes—violate the law of nations "whether undertaken by those acting under the auspices of a state or only as private individuals." *Kadic,* 70 F.3d at 239.

The trade union argues that its ATCA claims do not require state action because it was injured as a result of war crimes and genocide committed in the course of Colombia's civil war. Pl. Brief at 20 (Doc. 37). The union alleges that "Drummond managers knowingly sought to use the cover of the violence and lawlessness of the civil conflict to have Locarno, Orcasita, and Soler 'taken care of.' Plaintiffs were targeted for violence to further Defendants' business interest in becoming union-free, and the use of open violence to accomplish this end occurred because there is a raging civil war." Pl. Brief at 23 (Doc. 37). Defendants argue that the union has failed to adequately allege that the deaths at issue in this lawsuit were the result of genocide or war crimes. Defendants further argue that the union's claim that the murders were committed as part of a civil war or genocide conflicts with the union's statement that the union officials were murdered to inhibit the success of the union.

The Convention on the Prevention and Punishment of the Crime of Genocide, 78 U.N.T.S. 277, which was ratified by the United States, defines "genocide" to mean:

 any of the following acts committed with intent to destroy, in whole or in part, a

*national, ethnical, racial or religious group,* as such:

(a) Killing members of the group;

(b) Causing serious bodily or mental harm to members of the group;

(c) Deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part;

(d) Imposing measures intended to prevent births with the group;

(e) Forcibly transferring children of the group to another group.

*Kadic* 70 F.3d 232, 241 (2d Cir.1995) (citing Convention on Genocide art. II) (emphasis added). The First Amended Complaint lacks any allegations that the murders of Locarno, Orcasita, and Soler were the result of an "intent to destroy, in whole or in part, a national, ethnical, racial or religious group." SINTRAM-IENERGETICA is "a Columbian trade union that represents workers at the Drummond facilities in Columbia." Pl. First Am. Compl. at 8. It is not a national, ethnical, racial, or religious group. Therefore, this court finds that the genocide exception to the state action requirement is not applicable to this case.

The union also argues that state action is not required in this case because the murders of the union leaders were paramilitary acts for the war crime of summary execution. Plaintiff argues that because Article 3 of the Geneva Convention applies to "armed conflicts not of an international character" and protects civilians not participating in the conflict by requiring that they be free of "murder of all kinds," defendants are subject to the requirements of the law of war due to their relationship with the AUC. *See Doe v. Islamic Salvation Front,* 993 F.Supp. 3, 8 (D.D.C.1998). Thus, the question before the court is whether plaintiffs sufficiently alleged that defendants were engaged in war crimes that resulted in the extrajudicial killing of the union leaders.

■ As an initial matter, the court finds that the law of war as set forth in the Geneva Conventions applies to the AUC and the other paramilitary rebel groups operating in Columbia. *See Kadic,* 70 F.3d at 243 ("[U]nder the law of war as codified in the Geneva Conventions, all 'parties' to a conflict-which includes insurgent military groups-are obliged to adhere to these most fundamental requirements of the law of war."). The trade union alleges that the law of war also applies to defendants because the paramilitaries who murdered the trade union leaders were paid by defendants and, thus, were essentially acting as defendants' agents. Pl. First. Am. Compl. At 20.

■ At this stage in the proceedings, the court *assumes* the trade union's allegations are true. Thus, the court finds that the union sufficiently alleged that defendants acted in conjunction with the paramilitaries to violate the laws of war. The trade union leaders who were killed by the paramilitaries were not active participants in the civil war raging in Columbia. Thus, again assuming plaintiff's allegations to be true, defendants and their alleged agents violated the law of war by allegedly murdering the union leaders. *See* Geneva Convention I art. 3(1).

Having found that the union sufficiently alleged that defendants and their paramilitary agents violated the law of war by murdering the trade union leaders, this court does not address whether the union sufficiently alleged that defendants acted under color of state law.[6] *See Kadic v.*

---

**6.** The proper time for addressing the state action requirement is at the summary judgment phase. At that time, this court will examine the evidence presented by the parties to determine if the union can show that the paramilitaries were defendants' agents.

*Karadzic,* 70 F.3d 232, 239 (2d Cir.1995) (" 'Individuals may be held liable for offenses against international law, such as piracy, war crimes, and genocide.' ") (quoting Restatement (Third) of the Foreign Relations Law of the United States (1986) pt. II, introductory note). Because defendants concede that extrajudicial killing is an actionable tort under the ATCA and the union has adequately alleged that defendants committed this tort in violation of international law against an alien entity, this court denies Defendants' Motion to Dismiss as to Count One of Plaintiffs' First Amended Complaint.

**Ii. The Denial Of The Fundamental Rights To Associate And Organize May Be An Actionable Tort Under The Atca**

In Count Three of the First Amended Complaint, plaintiffs allege defendants "committed, or acted in concert to commit, or Defendants' co-venturers or agents committed, violent acts" that were "intentionally designed and carried out" to deny the union and its leaders "their fundamental rights to associate and organize." Pl. First. Am. Compl. At 34. The union argues that this denial of the fundamental rights to associate and organize constitutes an actionable tort under the ATCA because the rights to associate and organize are well-established norms of international law. In support of this argument, the union argues that the rights to associate and organize are protected in the *Universal Declaration of Human Rights* and Conventions 87 and 98 adopted by the International Labor Organization ("ILO"). Pl. Brief at 35.

In addition, the union submitted an affidavit from Virginia Leary, a law professor and former official with the ILO. Dr. Leary testified that "[a]lthough the U.S. has not ratified these specific ILO conventions [87 and 98] it has recognized its obligation to uphold the norm of freedom of association as a member of the ILO."

Dr. Leary also stated that the norm of freedom of association is contained in Articles 20 and 23 of the Universal Declaration of Human Rights, in Article 22 of the International Covenant on Civil and Political Rights "(ICCPR"), and in Article 8 of the International Covenant on Economic, Social and Cultural Rights. The United States and 146 other states ratified the ICCPR, which includes the following language: "Everyone shall have the right to freedom of association with others, including the right to form and join trade unions for the protection of his interest." The union notes that many courts have looked to the Universal Declaration of Human Rights and the ICCPR to ascertain norms of international law in ATCA cases. *See Mehinovic v. Vuckovic,* 198 F.Supp.2d 1322, 1345 n. 24 (N.D.Ga.2002) (citing ICCPR for authority that torture violates obligatory norms of customary international law); *Estate of Winston Cabello v. Armando Fernandez–Larios,* 157 F.Supp.2d 1345, 1359, 1361 (S.D.Fla.2001) (finding that Article 6 of the ICCPR is a customary international law, violations of which may be remedied by suits filed under the ATCA); *Ralk v. Lincoln County, Ga.,* 81 F.Supp.2d 1372, 1380 (S.D.Ga.2000) (finding that plaintiff "could bring a claim under the Alien Tort Claims Act for violations of the ICCPR") (relying on *Abebe–Jira,* 72 F.3d at 844).

Defendants argue that the rights to associate and organize are not "well-established, universally recognized" norms of international law, citing *Kadic,* 70 F.3d at 239. Defendants further argue that the United States, China, and India have refused to ratify ILO Conventions 87 and 98. Because these countries represent approximately 2.3 billion of the world's inhabitants, defendants argue that the ILO Conventions cannot represent a "universally recognized" agreement among nations of a fundamental right to associate and orga-

nize. Defendants ask this court not to give legal effect to a principle that has not been recognized "by the branches of our government constitutionally tasked with promulgating and implementing foreign policy." Def. Brief at 23.

In *Filartiga v. Pena–Irala*, 630 F.2d 876, 881 (2d Cir.1980), the Second Circuit Court of Appeals held that the term "law of nations" was not to be interpreted in accordance with international law standards as they existed in 1789, when the ATCA was passed. Instead, courts are to recognize the evolving nature of international law and evaluate the status of the law at the time a lawsuit is brought under the ATCA. *Filartiga*, 630 F.2d at 881. In analyzing the current state of international law, this court must determine whether the rights to associate and organize are sufficiently "specific, universal and obligatory" to qualify as norms of customary international law. *Alvarez–Machain v. United States*, 266 F.3d 1045, 1050 (9th Cir.2001).

In *Aquamar S.A., v. Del Monte Fresh Produce, N.A.,* 179 F.3d 1279, 1295 (11th Cir.1999), the Eleventh Circuit described the process of ascertaining customary international law as follows:

> We look to a number of sources to ascertain principles of international law, including international conventions, international customs, treatises, and judicial decisions rendered in this and other countries. *See* Malcolm N. Shaw, International Law 59 (1991) (citing article 38(1) of the Statute of the International Court of Justice); *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 715 (9th Cir.1992) ("In ascertaining and administering customary international law, courts should resort to 'the customs and usages of civilized nations, and, as evidence of these, to the works of jurists and commentators.' ") (quoting *The Pa-*

*quete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900)). "Courts label a rule as customary international law, only if the rule is both (a) accepted by a 'generality' of states and (b) accepted by them as law (i.e., a 'sense of legal obligation')." *Estate of Winston Cabello,* 157 F.Supp.2d at 1359 (citing Hiram E. Chodosh, *Neither Treaty Nor Custom: The Emergence of Declarative International Law,* 26 Tex. Int'l L.J. 87, 89 (1991) (citing Restatement (Third) of the Foreign Relations Law of the United States, § 102(2) (1987)) (defining customary law as "a general and consistent practice of states followed by them from a sense of legal obligation")); *see also Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 796 (D.C.Cir. 1984) (defining "law of nations" as "the principles and rules that states feel themselves bound to observe, and do commonly observe") (internal citation omitted).

■ Although this court recognizes that the United States has not ratified ILO Conventions 87 and 98, the ratification of these conventions is not necessary to make the rights to associate and organize norms of customary international law. As stated above, norms of international law are established by general state practice and the understanding that the practice is required by law. Restatement (Third) of the Foreign Relations Law of the United States, § 102 (1987). In addition, treaties and judicial decisions by international tribunals can embody customary international law. *See Ford v. Jose Guillermo Garcia,* 289 F.3d 1283, 1293 (11th Cir.2002) (using International Claims Tribunal for the Former Yugoslavia and recent decision by International Claims Tribunal for Former Yugoslavia as "the most recent indicia of customary international law"); *Estate of Winston Cabello,* 157 F.Supp.2d at 1359 (finding that treaties can constitute customary international law).

Article 22 of the ICCPR clearly states that the rights to associate and organize are fundamental rights. The United States and Colombia have ratified the ICCPR. Many international laws, such as the ICCPR, are not self-executing, *United States v. Duarte–Acero*, 208 F.3d 1282, 1284 n. 8 (11th Cir.2000) (citing 138 Cong. Rec. S4781, S4783 (daily ed. Apr. 2, 1992)), and thus require implementing legislation, such as the ATCA, for federal courts to enforce these laws and the rights within them. *Estate of Winston Cabello*, 157 F.Supp.2d at 1359 (citing *Duarte–Acero*, 208 F.3d at 1284 n. 8) (internal citations omitted). The rights to associate and organize are reflected in the ICCPR, the Universal Declaration of Human Rights, and Conventions 87 and 98 of the ILO.

▬ This court is cognizant that no federal court has specifically found that the rights to associate and organize are norms of international law for purposes of formulating a cause of action under the ATCA. However, this court must evaluate the status of international law at the time this lawsuit was brought under the ATCA. *Filartiga*, 630 F.2d at 881. After analyzing "international conventions, international customs, treatises, and judicial decisions rendered in this and other countries" to ascertain whether the rights to associate and organize are part of customary international law, this court finds, *at this preliminary stage in the proceedings*, that the rights to associate and organize are generally recognized as principles of international law sufficient to defeat defendants' motion to dismiss. *Aquamar S.A., v. Del Monte Fresh Produce, N.A.*, 179 F.3d 1279, 1295 (11th Cir.1999). Having reluctantly found that the fundamental rights to associate and organize support actionable torts under the ATCA, the court next addresses whether the union sufficiently plead state action to create subject matter jurisdiction under the ATCA for the union's claim in Count Three.

### iii. State Action

The union alleges that "[t]he paramilitary forces that murdered Locarno, Oracasita, and Soler were acting within the course and scope of a business relationship with Defendants with the advance knowledge, acquiescence, or subsequent ratification of Defendants." First. Am. Compl. at 12. The union also alleges that "[t]he paramilitaries in Colombia have a mutually-beneficial, symbiotic relationship with the Colombia government's military." First Am. Compl. at 13. The union asserts that "[t]he close, symbiotic relationship between the military and paramilitaries are acting under color of the authority of the government of Colombia." First. Am. Compl. at 16. Thus, the union asserts state action exists because the paramilitaries that murdered the trade union leaders included Colombian military soldiers and because the other paramilitaries who are not in the Colombian military are engaged in a symbiotic relationship with the military.

Defendants argue that the union's allegations of state action by the paramilitaries is insufficient because the Colombian Supreme Court of Justice ruled in 1989 that paramilitary groups are not authorized under Colombian law and do not act on behalf of the Colombian government. Defendants also argue that the sparse factual allegations in plaintiffs' complaint are inadequate to support the argument that the alleged murderers of the decedents are in a symbiotic relationship with the Colombian military.

▬ In assessing whether a plaintiff has adequately alleged state action, courts generally look to the standards developed under 42 U.S.C. § 1983. *See Bigio v. Coca–Cola Co.*, 239 F.3d 440, 448 (2d Cir. 2000) (" 'Color of law' jurisprudence of 42 U.S.C.1983 is a relevant guide to whether a defendant has engaged in official action

for purposes of jurisdiction under the Alien Tort Act."). The United States Supreme Court has articulated four alternative tests for the state action question: (1) the public function test; (2) the symbiotic relationship test; (3) the nexus test; and (4) the joint action test. *See, e.g., Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (applying joint action test); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (applying public function and nexus tests); *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (applying symbiotic relationship test). The court notes that the Supreme Court has recognized that the different tests may simply be "different ways of characterizing the necessarily fact-bound inquiry that confronts the Court." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

▆▆▆ Because the union alleges that some of the paramilitaries that murdered the union leaders were dressed in Colombian military uniforms and were members of the Colombian military, the court finds that sufficient allegations of state action are present through the direct actions of those paramilitaries who were also members of the Colombian military at this time. Pl. Am. Compl. at 20–21. Thus, the court does not engage in a fact-bound inquiry of the alleged joint action with, or the symbiotic relationship between, the defendants, the paramilitaries, and the Colombian military. Such a factual inquiry is "more easily resolved on summary judgment than on a motion to dismiss because the court must review the facts and 'circumstances surrounding the challenged

action in their totality.'" *National Coalition Gov't of the Union of Burma v. Unocal,* 176 F.R.D. 329, 346 (C.D.Cal.1997) (citing *Collins v. Womancare,* 878 F.2d 1145, 1150 (9th Cir.1989)).

Therefore, having found that the union is an alien, has adequately alleged an actionable tort for denial of the fundamental rights to associate and organize, and has adequately alleged state action, the court denies Defendants' Motion to Dismiss as to the union's ATCA claim in Count Three of the First Amended Complaint.

### 4. The Torture Victim Protection Act

In Count Two of the First Amended Complaint, the union asserts a claim under the Torture Victim Protection Act for the extrajudicial killing of the union leaders. Congress passed the Torture Victim Protection Act of 1991 ("TVPA"), Pub.L. No. 1020256, 106 Stat. 73 at Historical and Statutory Notes to 28 U.S.C. § 1350, to "establish an unambiguous and modern basis for a cause of action that has been successfully maintained under an existing law, section 1350 of the Judiciary Act of 1789 (the Alien Tort Claims Act), which permits Federal district courts to hear claims by aliens for torts committed 'in violation of the law of nations.'" *Abebe-Jira v. Negewo,* 72 F.3d 844, 848 (11th Cir.1996) (citing H.R.Rep. No. 367, 102d Cong., 2d Sess. 3, *reprinted in* 1992 U.S.C.C.A.N. 84, 86). The TVPA creates civil liability for any "individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to extrajudicial killing." [7] 28 U.S.C. § 1350, note, § 2(a)(2). Individuals

---

7. The TVPA defines "extrajudicial killing" as: "[A] deliberate killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indis-

pensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." 28 U.S.C. § 1350, note, § 3(a).

are liable for extrajudicial killing to the deceased's "legal representative or to any person who may be a claimant in an action for wrongful death." *Id.*

### a. The TVPA Applies to Corporations

To state a claim under the TVPA, a plaintiff must allege (1) that the individual defendant acted under color of law, (2) that defendant subjected an individual to torture or extrajudicial killing, and (3) that plaintiff has exhausted "adequate and available remedies" where the violative conduct occurred. *Beanal v. Freeport–McMoRan, Inc.,* 969 F.Supp. 362, 381 (E.D.La.1997). Defendants argue that the union has failed to allege the first and third elements. Specifically, defendants argue that the TVPA, by its plain language, applies only to "individual" defendants, not corporate entities, and thus the union cannot assert TVPA claims against the defendant corporate entities Drummond, Co., Inc. and Drummond, Ltd.. In making this argument, defendants rely on the case of *Beanal v. Freeport–McMoRan, Inc.,* 969 F.Supp. 362, 382 (E.D.La.1997).

The district court in *Beanal* held that the plain meaning of the term "individual" as set forth in the TVPA does not apply to corporations. In reaching this conclusion, the *Beanal* court relied on *Jove Engineering, Inc. v. I.R.S.,* 92 F.3d 1539, 1551 (11th Cir.1996). In *Jove Engineering, Inc.,* the Eleventh Circuit concluded that the term "individual" as used in the bankruptcy code does not include corporations. Specifically, after consulting the definition of "individual" in two dictionaries, the *Jove* court held that the plain meaning of the term "individual" in 11 U.S.C § 362(h) does not include a corporation. 92 F.3d at 1551. Although the *Beanal* court acknowledged that "Congress does not appear to have had the intent to exclude private corporations from liability under the

TVPA," the court concluded that "this court's interpretation that the TVPA only applies to natural persons is not at odds with the drafters [sic] apparent intentions, and indeed, gives deference to Congress' particular word choice." *Beanal,* 969 F.Supp. at 382.

The union argues that the plain language interpretation adopted by the *Beanal* court contradicts the legislative history of the statute, which does not include any suggestion of congressional intent to exclude private corporations from the definition of "individual" under the TVPA. The union urges this court to follow the recent decision in *SINALTRAINAL v. The Coca Cola Co.,* No. 01–3208, 2003 WL 1846195 (S.D.Fla. March 31, 2003). In *SINALTRAINAL,* the district court held that liability under the TVPA extended to corporations. In denying the corporate defendants' motion to dismiss, the *SINALTRAINAL* court found that "the legislative history of the TVPA does not reveal an intent to exempt private corporations from liability." Slip Op. at 17, 2003 WL 1846195. The *SINTRAINAL* court noted that although the *Beanal* court held that private corporations are not liable under the TVPA, the *Beanal* court also stated that "[c]ongress does not appear to have had the intent to exclude private corporations from liability under the TVPA." slip op. at 17, 2003 WL 1846195 (quoting *Benal v. Freeport–McMoRan, Inc.,* 969 F.Supp. 362, 382 (E.D.La.1997)).

The *SINTRAINAL* court gave three primary reasons for its conclusion that Congress did not intend to exclude corporations from the TVPA. First, the court noted that "[t]he Senate Judiciary Report explains that the purpose of the TVPA is to permit suits 'against persons who ordered, abetted, or assisted in torture.'" Slip Op. at 17 (quoting S.Rep. No. 249, 102d Cong., 1st Sess. (1991) (1991 WL

258662, *9–10)). Second, the court noted that the Senate Judiciary Report does not mention any exemptions for corporations and that courts have held corporations liable for violations of international law under the ATCA. Slip Op. at 17, 2003 WL 1846195. Third, the court found persuasive the Supreme Court's holding in *Clinton v. New York*, 524 U.S. 417, 428, n. 13, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998), that the term "individual" is synonymous with the term "person," and that the term "person" often has a broader meaning in the law than in ordinary usage. Slip Op. at 17, 2003 WL 1846195. Because "a corporation is generally viewed the same as a person in other areas of law," the *SINTRAINAL* court concluded that if Congress intended to exclude corporations from the TVPA, Congress would have explicitly done so. Slip Op. at 17, 2003 WL 1846195. Thus, because Congress failed to explicitly exclude corporations from the TVPA and because corporations can be sued under the ATCA, the *SINTRAINAL* court found that TVPA claims could be brought against private corporations. Slip Op. at 17.

This court follows the reasoning set forth in *SINTRAINAL* and finds that the plaintiff union can assert a TVPA against the corporate defendants. The court concludes that because corporations can be sued under the ATCA and Congress did not explicitly exclude corporations from liability under the TVPA, private corporations are subject to liability under the TVPA. Thus, because Drummond Co., Inc. and Drummond Ltd. are "individuals" under the TVPA, the union can assert TVPA claims against these entities.

**b. Exhaustion of Remedies Need Not be Pled under TVPA**

■ Defendants argue that the union has failed to exhaust its remedies under Colombian law and, therefore, is precluded from asserting a claim under the TVPA.

Section 2(b) of the TVPA states that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." Defendants argue that the exhaustion of remedies is an element of a TVPA claim and that the union's claim under the TVPA fails because the union failed to attempt to avail itself of relief under Colombian law. The union argues that even though it alleged exhaustion of remedies in the First Amended Complaint, it does not have the burden to demonstrate exhaustion until defendants make an affirmative showing of non-exhaustion.

■ As an initial matter, the court finds that defendants bear the burden of demonstrating that the union has not exhausted adequate and available remedies under Colombian law. *See Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887, 2002 U.S. Dist. LEXIS 3293, at *55–56 (S.D.N.Y. Feb. 28, 2002) (analyzing legislative history of TVPA and finding that "defendants, not plaintiffs, bear the burden of demonstrating that plaintiffs have not exhausted 'alternative and adequate' remedies"); *SINALTRAINAL v. The Coca Cola Co.*, No. 01–3208, 2003 WL 1846195, (S.D.Fla. March 31, 2003) (following reasoning of *Wiwa*). The court finds that defendants failed to show that plaintiffs could have brought a similar action in Colombia. Furthermore, the court finds that the union adequately alleged that it could not have pursued a similar action in Colombia. The union alleges in the First Amended Complaint that "[p]laintiffs do not have access to an independent or functioning legal system within Colombia to raise their complaints. Any effort by Plaintiffs to seek legal redress would be futile because those seeking to challenge official or paramilitary violence, including

prosecutors and prominent human rights activists, are at great risk from retaliation." Pl. First Am. Compl. at 2. Thus, the union alleged that remedies under Colombian law were unavailable. The TVPA only requires that exhaustion of remedies take place if such remedies are "adequate and available." The court finds that defendants failed to meet their burden of demonstrating that the union has not exhausted adequate and available remedies under Colombian law. Moreover, even if the defendants had met this burden, the court finds that the union adequately alleged the unavailability of remedies under Colombian law to state a claim under the TVPA and to survive a motion to dismiss.

### c. State Action

The court previously found that the union adequately alleged direct state action and a concomitant agency relationship between defendants, the paramilitaries, and the Colombian military to satisfy the state action requirement under the ATCA. *See supra* at 23. This analysis is applicable to the state action requirement under the TVPA.

### d. The union failed to show that it can bring a wrongful death claim

■ Having met these hurdles, however, does not mean that the union can proceed on its TVPA claim. Under the TVPA, individuals are liable for extrajudicial killing to the deceased's "legal representative or to any person who may be a claimant in an action for wrongful death." 28 U.S.C. § 1350, note, § 2(a)(2). The union fails to meet either of these statutory requirements. The court has already found that the union failed to provide any legal authority for its asserted right to sue for wrongful death under Colombian law. *See supra* at 10. The union has also failed to show that it is the legal representative of the deceased. Therefore, the union cannot assert a claim under the TVPA be-

cause it has no standing to sue for wrongful death; defendants' Motion to Dismiss as to the union's TVPA claims in Count Two is due to be granted.

### V. Conclusion

For the foregoing reasons, the court grants in part and denies in part Defendants' Motion to Dismiss First Amended Complaint (Doc 30). Specifically, the court dismisses the following claims without prejudice: (1) All claims by the individual, unnamed plaintiffs; (2) SINTRAMIENERGETICA's claims in Counts Four for wrongful death and in Count Five for aiding and abetting against all Defendants; and (3) SINTRAMIENERGETICA's claims in Count Two under the TVPA against all Defendants. The only remaining claims in this lawsuit are the union's claims in Count One under the ATCA against all Defendants for extrajudicial killing and the union's claims in Count Three under the ATCA against all Defendants for denial of the fundamental rights to associate and organize.

As stated at the hearing, the court finds that Defendants' Motion to Dismiss (Doc. 14) is moot and denies Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33). The court denies Plaintiffs' Motion for Leave to Proceed Anonymously (Doc. 34). Plaintiffs have thirty days from the issuance of this Memorandum Opinion to file a Motion to Proceed Anonymously and an Amended Complaint.

### ORDER

This case is before the court on Defendants' Motion to Dismiss Complaint (Doc. 14); Defendants' Motion to Dismiss First Amended Complaint (Doc. 30); Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33); and Plaintiffs' Motion for Leave

to Proceed Anonymously (Doc. 34). The court held a hearing on the above motions on September 17, 2002.

For the reasons stated in the Memorandum Opinion issued contemporaneously herewith, the court rules as follows:

1. Defendants' Motion to Dismiss (Doc. 14) is MOOT.
2. Defendants' Joint Motion to Dismiss First Amended Complaint Pursuant to Rule 8(a) (Doc. 33) is hereby DENIED.
3. Defendants' Motion to Dismiss First Amended Complaint (Doc. 30) is hereby GRANTED in part and DENIED in part. Specifically, the court dismisses the following claims without prejudice: (1) All claims by the individual, unnamed plaintiffs; (2) SINTRAMIENERGETICA's claims in Counts Four for wrongful death and in Count Five for aiding and abetting against all Defendants; and (3) SINTRAMIENERGETICA's claims in Count Two under the TVPA against all Defendants. The only remaining claims in this lawsuit are the union's claims in Count One under the ATCA against all Defendants for extrajudicial killing and the union's claims in Count Three under the ATCA against all Defendants for denial of the fundamental rights to associate and organize.
4. Plaintiffs' Motion for Leave to Proceed Anonymously (Doc. 34) is hereby DENIED.

Plaintiffs have thirty days from the issuance of this Order to file a Motion to Proceed Anonymously and an Amended Complaint if the individual plaintiffs desire to proceed with this case.